IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAMON FORBES,

                Movant,

    v.

UNITED STATES OF AMERICA,

                Respondent.

CRIMINAL ACTION NO.
1:09-cr-0177-3-WSD

CIVIL ACTION NO.
1:12-cv-01727-WSD

## OPINION AND ORDER

This matter is before the Court on Damon Forbes's ("Movant" or "Forbes")

Objections [306] to Magistrate Judge Gerrilyn G. Brill's Final Report and

Recommendation ("R&R") [303].  The R&R recommends that Forbes's Petition

under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Motion to

Vacate") [288] be denied, and that a certificate of appealability be denied.

## I.  BACKGROUND[1]

On April 7, 2009, a grand jury indicted Forbes on one count of conspiracy to

possess with intent to distribute at least five kilograms of cocaine, in violation of

---

[1]    To the extent Forbes objects to the "background" as stated in the R&R,
Forbes does not argue that the Magistrate Judge misstated material facts.  Rather,
Forbes asserts that the R&R does not reference the "time line" in his case, which he
believes is "crucial."  (Obj. at 1-2).  The Court finds that the Magistrate Judge
correctly determined the material facts of this case.  Forbes's objection is overruled.

21 U.S.C. §§ 846 and 841(b)(1)(a)(ii) [1].  On September 10, 2009, the indictment was unsealed.  On September 18, 2009, after retaining Ira Bradley Brownlow, Jr. ("Brownlow"), Forbes surrendered.  Also on September 18, 2009, Forbes, represented by Brownlow, was arraigned on the indictment and pleaded not guilty.

On September 22, 2009, the Government filed its "Notice of Sentencing Enhancement Pursuant to 21 U.S.C. § 851" (the "Section 851 Enhancement") [43], based on Forbes's prior conviction for conspiracy to possess cocaine with intent to distribute.[2]  The Section 851 enhancement and Forbes's prior conviction raised the minimum mandatory penalty for a conviction under Section 841 from 10 to 20 years imprisonment.

On October 8, 2009, Forbes appeared before the Court and pursuant to a negotiated plea agreement (the "Plea Agreement" [65.1]), pleaded guilty to one count of conspiracy to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(a)(ii).  The Plea Agreement provides:

### III.  ACKNOWLEDGEMENT OF PENALTIES

7.    The Defendant understands that, based on his plea of guilty, he will be subject to the following maximum and mandatory minimum penalties:

As to Count One of the Indictment

---

[2]    See United States v. Forbes, 1:98CR00072-002 (S.D. Ohio 1999).

(a)     Maximum term of imprisonment:  Life.

(b)     Mandatory minimum term of imprisonment:  20 years.

. . .

The Defendant understands that, before imposing sentence in this case, the Court will be required to consider, among other factors, the provisions of the United States Sentencing Guidelines and that the Court has the discretion to depart from those Guidelines.  The Defendant further understands that the Court may impose a sentence up to and including the statutory maximum as set forth in this paragraph and that no one can predict his exact sentence at this time.

. . .

## IV.  PLEA AGREEMENT

. . .

### Sentencing Guidelines Recommendations

**Acceptance of Responsibility**

11.     The Government will recommend that the Defendant receive the two-level adjustment for acceptance of responsibility pursuant to Section 3E1.1 of the Sentencing Guidelines, and the additional one-level adjustment if the offense level is 16 or higher. . . .

. . .

### Cooperation

**General Requirements**

14.     The Defendant agrees to cooperate truthfully and completely with the Government, including being debriefed and providing truthful testimony at any proceeding resulting from or related to Defendant's cooperation. . . .

. . .

        The Defendant understands that the Government alone will determine what forms of cooperation to request from the Defendant . . . .

. . .

**Conditional Section 5K/Rule 35 Motion**

16.     The Government agrees to make the extent of the Defendant's cooperation known to the sentencing court.  In addition, if the cooperation is completed before sentencing and the Government determines that such cooperation qualifies as "substantial assistance" pursuant to Title 18, United States Code, Section 3553(e) and/or Section 5K1.1 of the Sentencing Guidelines, the Government will file

a motion at sentencing recommending a downward departure from the applicable guideline range. . . . [T]he Defendant understands that the determination as to whether Defendant has provided "substantial assistance" rests solely with the Government.  Good faith efforts by the Defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure or a Rule 35 motion. The Defendant also understands that, should the Government decide to file a motion pursuant to this paragraph, the Government may recommend any specific sentence, and the final decision as to what credit, if any, the Defendant should receive for Defendant's cooperation will be determined by the Court.  If the Defendant fails to cooperate truthfully and completely, or if the Defendant engages in additional criminal conduct or other conduct inconsistent with cooperation, Defendant will not be entitled to any consideration whatsoever pursuant to this paragraph.
. . .

## Sentencing Recommendations
**Specific Sentence Recommendation**

17.    The Government agrees to recommend that the Defendant be sentenced at the low end of the adjusted guideline range.
. . .

## Recommendations/Stipulations Non-binding

21.    The Defendant understands and agrees that the recommendations of the Government incorporated within this Plea Agreement, as well as any stipulations of fact or guideline computations incorporated within this Plea Agreement or otherwise discussed between the parties, are not binding on the Court and that the Court's failure to accept one or more of the recommendations, stipulations, and/or guideline computations will not constitute grounds to withdraw his guilty plea or to claim a breach of this Plea Agreement.
. . .

## Integration Provision

26.    There are no other agreements, promises, representations, or understandings between the Defendant and the Government.

(Plea Agreement at 3-14).[3]  In the Plea Agreement, Forbes agreed to give up his

rights to a trial, to a direct appeal of his conviction and sentence, and to a collateral

attack on his conviction and sentence, and he agreed to pay the special assessment

before it was due and to cooperate with the Government.  (Id. at ¶¶ 2, 5, 19, 22).

The Plea Agreement is signed by Forbes, Brownlow and the Assistant United

States Attorney and the Approving Official within the United States Attorney's

Office.  (Id. at 14).  Forbes also signed a Certification of Defendant and Counsel,

attached to the Plea Agreement, which states:

> I have read the Indictment against me and have discussed it with my
> attorney.  I understand the charges and the elements of each charge
> that the Government would have to prove to convict me at a trial.  I
> have read the foregoing Plea Agreement and have carefully reviewed
> every part of it with my attorney.  I understand the terms and
> conditions contained in the Plea Agreement, and I voluntarily agree to
> them. . . .  No one has threatened or forced me to plead guilty, and no
> promises or inducements have been made to me other than those
> discussed in the Plea Agreement. . . .  I am fully satisfied with the
> representation provided to me by my attorney in this case.

(Id. at 15).

At his change of plea hearing, on October 8, 2009, the Court advised Forbes

---

[3]     The Plea Agreement also provided that the Government will dismiss all
remaining counts in the indictment, will not bring additional related charges
against Forbes, and will not use information previously unknown to the
Government and provided by Forbes in connection with the Plea Agreement to
bring additional charges against Forbes or determine the applicable sentencing
guideline range.  (Plea Agreement at ¶¶ 9-10, 15).

of his rights and made sure that he understood the charge to which he was pleading guilty.  (Tr. Plea Hr'g 5:17-12:2; 22:18-24:24).  Forbes acknowledged that a mandatory minimum sentence of 240 months imprisonment would have to be imposed and Forbes stated that he understood the terms of the Plea Agreement. (Id. at 18:13-19; 24:25-25:19).  The Court explained the sentencing process, the mandatory minimum punishment that Forbes faced, and that the Court could, if it decided that it was appropriate, impose the maximum authorized punishment of life imprisonment.  (Id. at 25:2-31:9; 34:20-36:5).  The Government described the elements of the conspiracy charged and the evidence of Forbes's participation, and Forbes agreed that he had engaged in discussions regarding the purchase or sale of cocaine.  (Id. at 23:3-24:24; 37:5-39:8).  Forbes admitted that he was guilty of Count 1 of the indictment and that it was in his best interest to plead guilty.  (Id. at 39:9-11, 20-23).  Forbes represented that he was satisfied with Brownlow's assistance, and that he had not been promised anything that other than what was set out in the Plea Agreement.  (Id. at 18:24-19:18; 22:10-17; 39:15-19).

On November 1, 2009, Forbes wrote a letter to the Court and expressed that he was "nervous and confused" when he appeared at his plea hearing.  (Nov. 1 Letter [168 at 1-2]).  Forbes wrote that, when Brownlow visited him in jail one week after his initial appearance, "he informed me that if I go trial and lose I'll get

life!" (Id.).  Forbes also stated that Brownlow brought Forbes the discovery in this case one week after he pleaded guilty, and after reviewing it, Forbes asked his family about hiring another lawyer.  (Id.).  Forbes asked the Court what he should do, and stated that he was "really scared."  (Id.).  Forbes did not ask to withdraw his plea or state that he had asked Brownlow to file a motion to do so.

Two weeks later, Forbes again sent a letter to the Court.  Forbes stated that he had had financial problems and that his daughter had been in an accident and he was unsure about her ability to return to normal.  Forbes wrote: "Judge I made a bad mistake by trying to get back into the drug business by buying sum [sic] kilo from a friend which after a couple of try's [sic] I never did get any!"  (Nov. 30 Letter [168 at 3-4]).  Forbes stated that "they offered me 20 yrs." and again asked, "Judge please look into this for me."  (Id.).  Forbes expressed his concern about the sentence he was facing, stating, "I'll get more time than the guys who where [sic] really in the conspiracy. . . . Time don't [sic] fit the crime."  (Id.).  Again, Forbes did not ask to withdraw his plea or state that he had asked Brownlow to file a motion to do so.

On December 8, 2009, attorneys Mark Yuracheck and Bruce Harvey entered their appearances for Forbes, in substitution for Brownlow [110].

On December 11, 2009, Brownlow moved to withdraw his representation of

Forbes, which the Court granted [119; 120].

On December 10, 2009, Forbes moved to withdraw his guilty plea.  (Mot. to Withdraw Plea [118]).  Forbes claimed that he has an earnest desire to go to trial, that at the time he pled he had not personally reviewed the discovery the Government produced, and that Brownlow did not give him a realistic evaluation of his sentencing exposure or the benefits of a plea.

On April 28, 2010, the Court denied Forbes's Motion to Withdraw Plea. The Court found that Forbes had close assistance of counsel, and that his plea was knowing and voluntary, including because Forbes fully understood the consequences of his decision.  (April 28th Order [169]).  The Court also found that Forbes's delay in moving to withdraw his plea cast doubt on Forbes's claimed adamancy that he always wanted to go to trial and, if granted, would result in prejudice to the Government and depletion of judicial resources.  (Id.).

On May 17, 2011, the Court sentenced Forbes to the mandatory minimum sentence of 240 months imprisonment [273].  The Government did not move to reduce Forbes's sentence for substantial assistance because Forbes "dramatically minimized his conduct and subsequently moved to withdraw his plea."  (Tr. of Sentencing Hr'g [287] at 10:14-20).

On May 17, 2012, Forbes, represented by new counsel Lynn Fant-Merritt

and Victoria Brunner, filed his Motion to Vacate.  Forbes raises the following

claims:

1.      Forbes's attorney rendered ineffective assistance of counsel:

   A.    in advising Forbes to enter his guilty plea pursuant to an
         unfavorable plea agreement which waived important rights
         without obtaining corresponding benefits;

   B.    when he failed to file a motion to withdraw Forbes's guilty
         plea when Forbes made the request;

   C.    when counsel, in the course of moving to withdraw,
         released confidential information that prejudiced Forbes;
         and

   D.    when counsel failed to review the discovery with Forbes,
         failed to discuss the possible defense of buyer/seller
         relationship, and misinformed Forbes regarding the
         consequences of a conviction after a trial.

2.      As a consequence of counsel's ineffective assistance, Forbes's
        plea of guilty to his indictment was involuntary.

The Government opposed Forbes's Motion to Vacate.

        On February 13, 2013, Magistrate Judge Brill issued her Final R&R,

recommending that Forbes's Motion to Vacate be denied.  The Magistrate Judge

found that Brownlow did not render ineffective assistance, that many of Forbes's

claims were contradicted by the record, and that Forbes was not entitled to relief on

his claim that his plea was not voluntary because that claim was based solely on

Brownlow's alleged ineffective assistance.  The Magistrate Judge also

recommended that a Certificate of Appealability be denied because Forbes failed to make a substantial showing of the denial of a constitutional right.

On February 28, 2013, Petitioner filed his Objections to the R&R.

## II.   DISCUSSION

### A.   Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal quotation marks omitted).  With respect to those findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

B.      Analysis

    1.      Forbes's claims of ineffective assistance of counsel

"Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984)." Green v. Nelson, 595 F.3d 1245, 1249 (11th Cir. 2010).   To show ineffective assistance of counsel, a movant must show that counsel's performance was deficient, which requires the movant to prove that "counsel's representation 'fell below an objective standard of reasonableness.'"  Wiggins v. Smith, 539 U.S. 510, 521 (2003) (quoting Strickland, 466 U.S. at 688).  Even if a reviewing court determines that "many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

A movant also must show that counsel's ineffectiveness prejudiced the movant.  Strickland, 466 U.S. at 687.  To show prejudice, a movant must prove that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  Such a reasonable probability must rise to the level of "undermin[ing] confidence in the outcome."  Id.  To establish prejudice in the context of a guilty

11

plea, the movant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). A movant is not entitled to relief if he fails to prove either deficient performance or prejudice. Strickland, 466 U.S. at 697.

> a. *Whether counsel was ineffective in advising Forbes to enter a negotiated plea*

Forbes asserts that Brownlow was ineffective in advising Forbes to enter into the Plea Agreement because Forbes gave up significant rights without receiving any corresponding benefits. The Magistrate Judge found that the Plea Agreement, at least, reduced the possibility that Forbes would receive more than the mandatory minimum sentence and provided for the possibility that Forbes's cooperation could result in a downward departure motion. (R&R at 6-8).

In his Objections, Forbes argues that he did not receive a benefit from the Government's promise "to recommend a sentence at the low end of the adjusted guideline range" because there was no reasonable possibility that he would receive a sentence higher than the mandatory minimum of 240 months imprisonment. Forbes claims his guideline range was lower than the mandatory minimum sentence and that the facts did not support a sentence higher than the mandatory minimum. The Court disagrees.

In the Plea Agreement, Forbes acknowledged that the mandatory minimum sentence was 240 months imprisonment, that the maximum sentence was life imprisonment, that the Court had the discretion to "impose a sentence up to and including the statutory maximum . . . and that no one can predict his exact sentence" at the time the Plea Agreement was signed.  (Plea Agreement ¶ 7). At the plea hearing, the Court asked Forbes:

> The Court:   Do you understand – do you agree that that's what the maximum penalty and the mandatory minimum penalty is that you face in this case?
> The Defendant:     Yes.
> The Court:   And do you understand that based upon your guilty plea, that if I thought it was appropriate, that I could in fact sentence you to the maximum authorized punishment?  Do you understand that?
> The Defendant:     Yes.

(Tr. Plea Hr'g 25:17-25).  The Court then explained the Sentencing Guidelines and the role they would play in the Court's determination of Forbes's sentence:

> The Court:   But we call them guidelines because that's what they are, they are guides for me.  They are not something that I have to accept.  Do you understand that?
> The Defendant:     Yes.
> The Court:   Which means that what is a reasonable sentence in your case is solely within my prerogative and discretion.  Do you understand that?
> The Defendant:     Yes.
> The Court:   And another way of saying that is that I will look at what the guidelines recommend, but it's within my discretion to impose a sentence that's greater than what the guidelines recommend or less than what the guidelines recommend.  Do you understand that?

The Defendant:     Yes.

(Id. 32:21-33:9).  The Court next discussed the Plea Agreement:

The Court:   [The Government has] agreed with you to recommend that whatever I determine to be the sentencing guideline range, they are going to recommend that I sentence you at the lowest end of that range, and they are required to make that recommendation.

You should know that those – I listen carefully to those, but I don't always follow them, because I don't agree with them. Sometimes I don't agree because what they have calculated is different than what I think the law requires, and sometimes I agree not to exercise my discretion in sentencing the way the government recommends that I exercise my discretion or the way that you have agreed with the government that I should or you would like for me to do.

All that means is that I will listen carefully and give due weight to the recommendations given to me, but I don't have to follow them. Do you understand that?

The Defendant:     Yes, sir.

The Court:   And in fact, I can reject all or part of them.  Do you understand that?

The Defendant:     Yes, sir.

(Id. 35:10-36:5).  Forbes thus expressly acknowledged that he faced a mandatory minimum sentence of 240 months imprisonment, a maximum sentence of life imprisonment, and that the Court could exercise its discretion to impose the maximum sentence.  Because there was a mandatory minimum sentence in this case, Forbes's guideline range could have been below the mandatory minimum sentence of 240 months was determined to be the guideline sentence.[4]  The Court,

---

[4]        Section 5G1.1 of the Sentencing Guidelines provides that, "[w]here a

however, was not prohibited from imposing a sentence greater than the mandatory minimum sentence.  The Plea Agreement did, in fact, reduce the possibility that Forbes would receive more than the mandatory minimum sentence.[5]

Forbes next objects to the Magistrate Judge's finding that Forbes benefitted from the Plea Agreement based on the "possibility of Forbes's cooperation and a downward departure motion."  (Obj. at 4).  Forbes argues that Brownlow should have known that Forbes could only provide third-party cooperation and that the Government was not interested in third-party cooperation.  Forbes asserts that he "explained to his attorney that he did not know much about the defendants charged in the case," that he "could provide information about the conversations he had with co-defendant Jones, but he did not know co-defendants Ayers or White," and that "although Petitioner knew co-defendant Franklin, he had never had any drug dealings with Franklin and never observed Jones and Franklin conduct any drug transactions."  (Mot. to Vacate at 8).  Based what was known to Brownlow at the

---

statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."  U.S. Sentencing Guidelines Manual § 5G1.1(b) (2010).  Thus, Forbes's guideline sentence was 240 months.  See 21 U.S.C. § 841(b)(1)(A) (defendant convicted under this section who has a prior conviction for a felony drug offense that has become final is subject to sentence of twenty years to life).

[5]     To the extent Forbes argues that he would have received the same sentence if he had gone to trial and was convicted, the Court notes that Forbes acknowledges scenarios where his post-trial guidelines range could encompass the 240 month mandatory minimum sentence.  (See Mot. to Vacate at 21).

time of Forbes's plea, Brownlow could have reasonably believed that Forbes might have qualified for a downward departure motion based on his own assistance, without considering the alleged third-party assistance. See Price v. United States, 456 F. App'x 795, 798 (11th Cir. 2012). That Forbes ultimately was unable or unwilling to provide information sufficient for a downward departure motion does not render that provision of the Plea Agreement meaningless or without benefit. The Court agrees with the Magistrate Judge's conclusion that Forbes fails to support that Brownlow rendered ineffective assistance of counsel in his recommendation that Forbes enter a negotiated guilty plea. Forbes's objection on this ground is overruled.

> b.   *Whether counsel was ineffective in failing to file a motion to withdraw Forbes's guilty plea*

Forbes alleges that he told Brownlow, "no later than October 27, 2009," that he wished to withdraw his guilty plea, and that Brownlow was ineffective in refusing to file a withdrawal motion. Forbes argues that "the delay in filing the motion to withdraw the plea was a factor repeatedly cited by the District Court in denying the motion [to withdraw his plea]." (Obj. at 22).

Forbes objects to the Magistrate Judge's conclusion that, even if Forbes's claim that he wanted to withdraw his plea no later than October 27, 2009, was true, Forbes failed to show that he was prejudiced. The Magistrate Judge found that

Brownlow's refusal to file a motion to withdraw Forbes's guilty plea did not

prejudice Forbes because the motion to withdraw would have been denied even if

filed when Forbes claims he requested.

In its April 28, 2010, Order, the Court found that Forbes received "close

assistance of counsel," that his plea was "knowing and voluntary," that Forbes

fully understood the consequences of his decision, that his delay in moving to

withdraw his guilty plea resulted in prejudice to the Government and, if granted,

would further waste judicial resources.  The Court also found that the facts did not

present a credible reason to allow Forbes to withdraw his plea, including because

Forbes did not claim that he was promised a more lenient sentence, and because he

admitted his guilt at the plea hearing and in the two subsequent letters he wrote to

the Court.  The Court found that Forbes's concerns and anxiety about the sentence

he faced, while apparently authentic, were not a reason to allow Forbes to

withdraw his plea.

Although Forbes's delay in moving to withdraw his plea was a factor

supporting the Court's denial of his motion, it was not the only reason.  Even if

Brownlow was ineffective in refusing to file the motion when Forbes requested—

which the Count does not find—Forbes cannot show that there is a reasonable

probability that, had Brownlow timely filed the motion, the Court would have

allowed the guilty plea to be withdrawn.  The Court agrees with the Magistrate

Judge's conclusion that Forbes fails to establish that he was prejudiced by

Brownlow's refusal to move to withdraw his plea when Forbes claims he

requested.  Forbes's objection on this ground is overruled.[6]

          c.     *Whether counsel was ineffective in releasing confidential*
                *information*

       Forbes argued in his Motion to Vacate that Brownlow, in moving to

withdraw his representation of Forbes, was ineffective because he released

confidential information, specifically a September 21, 2009, letter signed by

Forbes instructing Brownlow to "confer with [the prosecutor] and tell him I desire

to cooperate with the government in the prosecution of my case and the cases of

my co-defendants."  (Sept. 21 Letter [119.1 at 4]).  In his Reply, Forbes states that

he "did not raise counsel's release of confidential information as a separate claim.

Rather, Mr. Forbes included the information to show that counsel was ineffective

---

[6]     To the extent Forbes also objects to the Magistrate Judge's finding that the
record contradicts Forbes's contention that he unequivocally wanted to withdraw
his plea no later than October 27, 2009, because the Magistrate Judge did not hold
an evidentiary hearing, Forbes fails to satisfy the prejudice prong of the Strickland
test and thus, even if Forbes's assertion was true, the Court was not required to
conduct an evidentiary hearing.  See, e.g., 28 U.S.C. § 2255 (the court shall hold an
evidentiary hearing "unless the motion and the files and records of the case
conclusively show that the prisoner is entitled to no relief."); Strickland, 466 U.S.
at 697 (movant is not entitled to relief if he fails to prove either deficient
performance or prejudice).

in his understanding of his duties to his client."  (Reply [302] at 8).  Forbes does not object to the Magistrate Judge's conclusion that this claim does not state a valid basis for relief under Section 2255.  To the extent Forbes has not abandoned this claim, the Court agrees with the Magistrate Judge's conclusion that Forbes fails show that Brownlow was ineffective in allegedly releasing confidential information and finds no plain error in the conclusion reached.[7]

> d.   *Whether counsel was ineffective in failing to review discovery with Forbes, failing to discuss trial defenses, and misinforming Forbes regarding the consequences of going to trial*

Forbes claims that Brownlow was ineffective in failing, before Forbes entered his guilty plea, to provide to or review with Forbes the discovery in this case.  Forbes asserts that Brownlow only discussed the Government's case against him and did not explore the possibility that Forbes had a buyer-seller defense.  Forbes asserts that a "buyer-seller" defense has apparent support in the discovery.  The Magistrate Judge found that Forbes does not specify what discovery materials he is now aware of (and was not aware of at the time of his plea) that would have motivated a decision to go to trial.  (R&R at 13-14).  The Magistrate Judge also found that, even if Brownlow did not specifically discuss all of the discovery and

---

[7]   That a cooperation provision was included in the Plea Agreement discredits any claim that the disclosure that Forbes desired to cooperate impacted him adversely in any way.

the possibility of a buyer-seller relationship, Brownlow was not ineffective because Forbes was advised of the elements of a conspiracy and that the evidence did not support a buyer-seller relationship defense.  (R&R at 13-16).

In his Objections, Forbes argues that the Magistrate Judge erred in dismissing these claims without an evidentiary hearing, and that review of the discovery establishes a buyer-seller relationship defense and the existence of multiple conspiracies, as opposed to the single conspiracy charged in the indictment.  Forbes contends that, at an evidentiary hearing, he would offer the discovery materials provided to Brownlow and his replacement counsel, and that the evidence consisted of DEA surveillance and incident reports, and wiretap applications.  Although Forbes argues that "[i]t takes the whole of the discovery materials to establish the defense," Forbes fails even to summarize the information he claims supports that the buyer-seller defense applies.  An evidentiary hearing is not required where the facts alleged are not "reasonably specific [and] non-conclusory."  Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002); see 28 U.S.C. § 2255 (an evidentiary hearing not required where the motion and the files and records of the case conclusively show movant is not entitled to relief).  Forbes is not entitled to an evidentiary hearing.  His conclusory assertion that some unidentified evidence would have caused him to go to trial is not sufficient to

20

support that Brownlow was ineffective in allegedly failing to review discovery with Forbes.  Forbes's objections on these grounds are overruled.

Forbes next claims that Brownlow was ineffective in failing to advise him that he had viable defenses to the conspiracy charged.  "Where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry [of the Strickland test] will depend largely on whether the affirmative defense likely would have succeeded at trial."  Hill, 474 U.S. at 59; see also St. Pierre v. Walls, 297 F.3d 617, 628 (7th Cir. 2002) (effective counsel is not required to discuss every possible defense with the defendant, especially one not suggested by any evidence).

To prove that a defendant was a member of a conspiracy, the Government must show that two or more persons entered into an agreement, that the defendant knew the agreement's general purpose, and that the defendant voluntarily participated in the agreement.  United States v. Meester, 762 F.2d 867, 881 (11th Cir. 1985).  "[T]he existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement."  United States v. Thompson, 422 F.3d 1285, 1292 (11th Cir. 2005).  When a defendant merely receives "small amounts" of drugs from a supplier, "and there [is] no evidence that the defendant turned around and sold [the drugs] . . . or otherwise assisted the

ongoing 'business,'" only a buyer-seller agreement exists.  United States v. Dekle,

165 F.3d 826, 830 (11th Cir. 1999).  Thus, "[w]hat distinguishes a conspiracy from

its substantive predicate offense is not just the presence of any agreement, but an

agreement with the same joint criminal objective—[in a conspiracy alleged under

21 U.S.C. § 846,] the joint objective of distributing drugs."  Id. at 829.  "The

purpose of the buyer-seller rule is to separate consumers, who do not plan to

redistribute drugs for profit, from street-level, mid-level, and other distributors,

who do intend to redistribute drugs for profit, thereby furthering the objective of

the conspiracy."  United States v. Ivy, 83 F.3d 1266, 1285-1286 (10th Cir. 1996).

Here, the evidence shows that: on April 12, 2008, co-defendant Jones told

Forbes that he was receiving a cocaine delivery in two days, and Forbes ordered

from Jones ten kilograms of cocaine, at $20,200 per kilogram; on April 14, 2008,

Jones told Forbes that the cocaine was not acceptable quality, but that he would

have more cocaine the next day; on April 17, 2008, Jones drove to a residence

where Forbes was located; and on April 22, 2008, Jones told Forbes that he was

going to obtain the cocaine the next morning, and Forbes replied that he was

"ready to work" and had the necessary money but needed to get it.  (Tr. Plea Hr'g

38:5-18; Movant's Reply at 2).  After hearing this evidence, and after he was

advised of the elements of the crime,[8] Forbes admitted that he and his co-defendants agreed among themselves to engage in the trafficking of cocaine, and that he engaged in conversations related to the purchase or sale of cocaine. (Tr. Plea Hr'g at 38:22-39:8).

This evidence does not support the existence of a "mere buyer-seller relationship" between Forbes and Jones.  Instead, Forbes's statement that he was "ready to work," coupled with the large quantity of cocaine he attempted to purchase and his admission, in his second letter to the Court, that he "made a bad mistake by trying to get back into the drug business by buying sum [sic] kilo from a friend . . . after a couple of try's," supports that Forbes's involvement went beyond a simple attempt to purchase multiple kilograms of cocaine for his private consumption.  Rather, it supports that Forbes shared in the common goal of the conspiracy alleged, specifically, to distribute a significant amount of cocaine.  See, e.g., United States v. Madera-Madera, 333 F.3d 1228, 1233 (11th Cir. 2003) (intent to distribute can be inferred from defendant's possession of significantly large

---

[8]     There is no merit in Forbes's objection to the Magistrate Judge's conclusion that advice regarding the elements of a conspiracy sufficiently informs a defendant that a simple buyer-seller relationship is insufficient to form a conspiracy.  See, e.g., United States v. Lively, 803 F.2d 1124, 1128-1129 (11th Cir. 1986) (jury charge which recited elements of drug conspiracy offense adequately and correctly covered requested instruction on simple buyer-seller transactions); United States v. Russell, 378 F. App'x 884, 888 (11th Cir 2010) (same).

quantity of drugs) (citing United States v. Bain, 736 F.2d 1480, 1486 (11th Cir.

1984)); United States v. Jean-Louis, 399 F. App'x 567, 569 (11th Cir. 2010) (jury

could infer existence of a conspiracy, instead of buyer-seller relationship, where

defendant talked about his customers with co-defendant, co-defendant sold

defendant drugs in distributable form, and defendant bought considerably more

than user quantities); United States v. Mercer, 165 F.3d 1331, 1335 (11th Cir.

1999) (references to having people ready to sell or details of drug delivery

sufficient to show conspiracy rather than buyer-seller relationship); cf. United

States v. Hardy, 715 F.2d 1501 (11th Cir. 1990) (that defendant possessed and

shared small amount of cocaine did not support inference that defendant entered

into a prior agreement with certain unnamed persons to distribute cocaine).[9]

---

[9]     That these defenses allegedly were "at least viable enough to go to trial,
especially since that is exactly what one of the co-defendants, who was most
similar to Mr. Forbes did," (Obj. at 29), is not sufficient to support Forbes's
argument that the Magistrate Judge erred in finding that Brownlow was not
ineffective because the evidence did not support that Forbes and Jones were
engaged in a buyer-seller relationship.
        The evidence also does not support Forbes's claimed defense—to the extent
it was properly raised in his Motion to Vacate—that, at most, the evidence supports
the existence of multiple conspiracies and that "Jones and White, working together
had different buyers who were unconnected, including Mr. Forbes."  (Obj. at 26).
That Forbes states in his Reply that "Jones was the supplier and head of a multi-
kilogram cocaine trafficking conspiracy that distributed cocaine," (Movant's Reply
at 2), and that Forbes's actions—had he successfully obtained the ten kilograms of
cocaine he sought and "work[ed]" like he had intended—would have facilitated the
conspiracy as a whole, supports that Forbes was engaged in the single conspiracy

Forbes fails to show that Brownlow was ineffective for not advising him of alleged

defenses that were not supported by the evidence and likely would not have been

successful at trial.  See Hill, 474 U.S. at 59; St. Pierre, 297 F.3d at 628.  Forbes's

objection on this ground is overruled.

Finally, Forbes argues that Brownlow was ineffective because he provided

"completely inaccurate advice" when he told Forbes that he would receive a life

sentence if he was convicted after a jury trial, but that, if he pleaded guilty pursuant

to the Plea Agreement, he would receive a "term of imprisonment . . . in the single

digits in terms of years."  (Mot. to Vacate at 19).  Forbes argues that he "was not

realistically facing significantly more time had he gone to trial instead of entering a

---

alleged in the indictment, regardless of whether he knew the other conspirators.
See, e.g., United States v. Seher, 562 F.3d 1344, 1366 (11th Cir. 2009) (to
determine whether a jury could have found a single conspiracy, a court considers
(1) whether a common goal existed; (2) the nature of the underlying scheme; and
(3) the overlap of participants); United States v. Chandler, 388 F.3d 795, 811 &
n.21 (11th Cir. 2004) ("[I]f a defendant's actions facilitated the endeavors of other
co-conspirators or facilitated the venture as a whole, then a single conspiracy is
shown. . . .  In a drug conspiracy, in which the object of the conspiracy is clearly
illegal and there are various clandestine functions to perform, the conspirators can
be charged with knowledge that others are performing these different functions.");
United States v. Edouard, 485 F.3d 1324, 1347 (11th Cir. 2007) (the finding of a
single conspiracy is permitted where a "key man" directs and coordinates the
activities and individual efforts of various combinations of people) (citing United
States v. Anderson, 326 F.3d 1319, 1327-1328 (11th Cir. 2003)); United States v.
Alred, 144 F.3d 1405, 1415 (11th Cir. 1998) ("It is irrelevant that particular
conspirators may not have known other conspirators . . . all that the government
must prove . . . is an agreement or common purpose to violate the law and
intentional joining in this goal by coconspirators.").

guilty plea than the twenty year minimum mandatory that he received," and that

Brownlow's advice that he "would" receive a life sentence if he proceeded to trial

"is a different matter than what the Court discussed" at the plea hearing.  (Obj. at

30-31).

The Magistrate Judge correctly found that Forbes's claim that Brownlow

misinformed him of the consequences of a conviction after trial is clearly

contradicted by what the Court told Forbes, and by what Forbes said he

understood, at his plea hearing.  As the Court already discussed, Forbes did in fact

face a life sentence if he proceeded to trial and he agreed at the plea hearing that a

life sentence was the authorized maximum punishment, and that he fully

understood that he could receive the maximum sentence if the Court believed it

was appropriate.  Forbes's current claim that he was misled by Brownlow's advice

is discredited by the record.  At the plea hearing, the Court specifically asked

Forbes whether any promise had been made to him other than those in the Plea

Agreement, whether anyone had promised what actual sentence he would receive,

whether anyone forced him to plead guilty, whether he disagreed with anything

Brownlow told him, and whether anything the Court told him was different from

what Brownlow told him.  Forbes answered "no" to each question, and twice

affirmed that he was satisfied with his counsel and that he thought it was in his best

interest to plead guilty.  Forbes's sworn statements at the plea hearing carry great weight and "there is a strong presumption that the statements made during the colloquy are true."  See United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987); see also Orum v. United States, No. 3:08-cv-367, 2010 WL 2867937, at *5 (M.D. Ala. June 29, 2010) ("Weighing the cursory assertions in [movant's] § 2255 motion against the record evidence, including [movant's] declarations at the plea hearing, this court concludes that [movant] fails to demonstrate that his counsel rendered ineffective assistance . . . .").  Forbes's claims that he did not understand the mandatory minimum, or that he was confused about his sentence exposure, are contradicted by his statements at the plea hearing. It is clear that Forbes was aware of the sentence that could be imposed if he either went to trial and was convicted, or pleaded guilty to the charge in the indictment.

To the extent Forbes alleges that Brownlow's prediction that Forbes would receive a "term of imprisonment . . . in the single digits in terms of years" was not made in good faith, the Plea Agreement specifically provided for the possibility of Forbes's cooperation and a downward departure motion.  If Forbes's involvement in the conspiracy was limited, and other circumstances warranted it, a single-digit sentence was possible.[10]  Even if Brownlow made an erroneous prediction that

---

[10]     Forbes's reliance on Cooks v. United States, 461 F.2d 530 (5th Cir. 1972), to

Forbes would receive a downward departure for substantial assistance, that his prediction turned out to be wrong does not constitute ineffective assistance of counsel.  See, e.g., United States v. Massey, 516 F.2d 1001, 1002 (5th Cir. 1975)[11] (rejecting state habeas petitioner's argument that guilty plea should be set aside because it was induced by counsel's statement that judge generally gave sentence of 20 years for second degree murder cases and that defendant might expect such sentence; a good faith but erroneous prediction of a sentence by defendant's counsel does not render guilty plea involuntary); United States v. Bjorkman, 270 F.3d 482, 502-503 (7th Cir. 2001) (having been informed of correct sentencing parameters by the court, petitioner was precluded petitioner from arguing that he

---

support that Brownlow's advice constituted a "significant misleading statement[]" and was "patently erroneous," is misplaced.  In Cooks, the defendant was charged with one count of transporting a specified forged money order across state lines, and five counts of aiding and abetting the transportation in interstate commerce of five other specified forged money orders on the same date.  Counsel advised the defendant that if he went to trial, he would face a maximum sentence of up to sixty years, ten years on each count, and that he should accept the plea deal in which he would plead guilty to count one, in exchange for the government's agreement to dismiss the other five counts.  Id. at 532.  Because a single trip across state lines can result in only one criminal charge of transporting forged securities in interstate commerce, the court found that the other five counts in the indictment were unenforceable, and thus counsel's advice that defendant may be subject to a sentence six times more severe than the law would really allow was patently erroneous.  Id. at 531-532.  Here, it is clear that the maximum authorized punishment was life imprisonment, regardless of Forbes's guideline range.

[11]      In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Former Fifth Circuit issued before the close of business on September 30, 1981.

pled guilty based on counsel's alleged alternative characterization of sentencing

possibilities); cf. Brady v. United States, 397 U.S. 742, 751 (1970) (guilty plea not

invalid on ground that it was compelled because it was motivated by defendant's

desire to accept the certainty or probability of lesser penalty rather than face wider

range of possibilities extending from acquittal to conviction and higher penalty

authorized by law for the crime charged.).[12]   Forbes fails to show that Brownlow

was ineffective in allegedly "misinforming" Forbes of the consequences of going

to trial.  Forbes's objection on this ground is overruled.

>    2.    Alleged involuntariness of Forbes's plea due to ineffective
>          assistance

Forbes alleges that his plea was not voluntary because of Brownlow's

alleged ineffective assistance.  The Magistrate Judge correctly determined that this

claim also must be dismissed.  (R&R at 18).  To the extent Forbes objects to the

---

[12]    Forbes further fails to show that, but for Brownlow's failure to advise Forbes of the Government's policies regarding third-party assistance, Forbes would have insisted on going to trial.  Forbes faced a mandatory minimum sentence of 240 months imprisonment and could receive a lesser sentence only if he was acquitted at trial or qualified for a substantial assistance motion.  In light of the evidence of his guilt, including the recorded conversations in which Forbes attempted to purchase a large amount of cocaine from Jones, it was unlikely that Forbes would have been acquitted at trial, and thus seeking a substantial-assistance motion was Forbes's best option.  Forbes understood when he pleaded guilty that the Government retained discretion about whether to file the motion and that there was no guarantee that his assistance, third-party or not, would entitle Forbes to a downward departure.  See Price, 456 F. App'x at 799.

Magistrate Judge's conclusion, his objections are based solely on his arguments that Brownlow was ineffective.  Because the Court found that Brownlow did not provide ineffective assistance of counsel, this objection is overruled.

### 3.   Certificate of Appealability

A district court "must issue or deny a certificate of appealability [under 28 U.S.C. § 2253(c)] when it enters a final order adverse to the appellant."  See R. Governing § 2255 Cases 11(a).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court agrees with the Magistrate Judge that Forbes has not made a substantial showing of the denial of a constitutional right.  Forbes fails to demonstrate that a reasonable jurist could debate whether he states a valid claim for relief under Section 2255.  Forbes's objection is overruled, and a certificate of appealability is denied.[13]

---

[13]   To the extent Forbes asserts a separate objection to the Magistrate Judge's failure to hold an evidentiary hearing, Forbes's objection is overruled.  Even if the "facts" alleged by Forbes were true, for the reasons already stated in this Order, Forbes is not entitled to relief under Section 2255.

III.   **CONCLUSION**

For the foregoing reasons, and having reviewed *de novo* those findings and recommendations in the R&R to which Forbes asserted an objection, and having reviewed for plain error the remaining findings and recommendations in the R&R to which an objection was not asserted,

**IT IS HEREBY ORDERED** that Forbes's Objections [306] are **OVERRULED.**

**IT IS FURTHER ORDERED** that Magistrate Judge Gerrilyn G. Brill's Final Report and Recommendation [303] is **ADOPTED.**

**IT IS FURTHER ORDERED** that Forbes's Section 2255 motion to vacate his sentence [288] is **DENIED.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**SO ORDERED** this 8th day of August, 2013.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE